UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARK WILSON,

                                        Plaintiff,

                                                        CIVIL CASE NO. 05-40225
v.

                                                        HONORABLE PAUL V. GADOLA
CITY OF EASTPOINTE POLICE                               U.S. DISTRICT COURT
LIEUTENANT FRANK J. REICHENBACH,
 *et al.*,

                                        Defendants.
_____/

## ORDER

Plaintiff filed a complaint against the Defendant officers and now claims that the officers

used excessive force in effecting his arrest in violation of the Fourth Amendment and that the

officers use of excessive force was in retaliation of his exercise of his First Amendment right to free

speech. Now before the Court is Defendants' motion for summary judgment. For the reasons stated

below, the Court will grant Defendants' motion in part and deny in part.

### I.      Background

On June 21, 2003, Plaintiff Mark Wilson and his wife, Marjorie Wilson, were hosting a high

school graduation party for their daughter at 21818 Nevada, Eastpointe, Michigan. Plaintiff's Mot.,

p. 3. Approximately 100 people attended the party at some point during the day and evening. Dep.

Marjorie Wilson, Ex. D of Def's Mot., pp. 83-86. The Wilsons supplied food, drinks, and alcohol

for their guests. *Id*.

1

At approximately 7:45p.m., Sergeant Leo Borowsky and Officer Jeffry Menzer were dispatched to investigate a complaint of a loud house party on Nevada Street.  The officers spoke with the Wilsons and another nearby homeowner who was also hosting a separate party.  The officers warned the hosts that if there were more complaints that evening the officers could issue citations and arrest the homeowners.  Dep. Mark Wilson, Ex. A of Def's Mot., pp. 189-91; Dep. Marjorie Wilson, pp. 98-99.  The Wilsons returned to their backyard party but acknowledge that they made no effort to quiet the guests nor change their behavior in any way. Dep. Mark Wilson, pp. 196-97.         At approximately 11:20p.m., Officer Menzer, Officer David Teolis, and Sgt. Borowsky were dispatched to Nevada Street based upon another complaint of a loud party.  At approximately 11:45p.m., two of the officers advised the Wilsons about the complaint.  The officers advised that the party needed to be "shut down."  In-Car Recording, Exs. E & F of Def's Mot. Marjorie Wilson repeatedly argued that they were doing nothing wrong and that the party could not be loud or disorderly if the guests, including all of the Wilson's neighbors, were merely in the Wilson's own backyard. Dep. Marjorie Wilson, p. 106.  After a lengthy discussion, Sgt. Borowsky advised the Wilsons that if they refused to terminate the party, the officers would issue a citation and possibly arrest any offenders.  *Id.* at 110-11; Exs. E & F.  Marjorie Wilson warned that her husband was about "to go off" and that she was taking everyone into the backyard to "continue the party." Exs. E & F.  Mark Wilson became very upset and indicated he was going to take the party indoors. Dep. Mark Wilson, pp. 201-03; Dep. Marjorie Wilson, pp. 113-14; Exs. E & F.  Each of the Wilsons then proceed into the backyard.

The officers returned to their cars where Sgt. Borowsky ordered officer Menzer to issue a

citation. Test. of Borowsky, Pl's Resp., Ex. 2, p. 96. Standing around the several police cars now on Nevada street, one of the officers indicated that it may be necessary to go into the back yard to "bust some heads." Ex. F. Officer Teolis then stated that is "what it will come down to," and referred to Mark Wilson as the "homeowner running his mouth." Test. of Teolis, Pl's Resp, Ex. 6, pp. 60, 108-10; Test. of Borowsky, p. 100. Shortly after these statements, Lieutenant Frank Reichenbach arrived. The parties account of the events that followed are wildly divergent. However, for the purposes of this order, the Court must take the facts in a light most favorable to the non-moving Plaintiff.

After being briefed on the previous events of the evening, Lt. Reichenbach approached the Wilson's backyard. According to Plaintiff, Plaintiff immediately held his hands up in a gesture of surrender. Plaintiff claims that despite his gesture and without any provocation, Lt. Reichenbach charged towards him and grabbed his arm. Dep. Mark Wilson, pp. 224-26. Plaintiff admits that he resisted the efforts of Lt. Reichenbach, a physically much smaller man, to force him to the ground, allowing Reichenbach to "hang on [Plaintiff's] arm." Dep. Mark Wilson, pp. 226-31. When Riechenbach could not get Plaintiff to the ground, he called for the other officers to assist him. *Id*. at 231. Plaintiff denies shoving, striking, or swinging at any of the officers trying to subdue him. *Id*. at 234-35. Plaintiff admits that he may have unintentionally struck one of the officers while trying to protect his eyes from the spray. Def's Mot., Ex. H, Criminal Trial Test. of Mark Wilson, pp. 119-21, 140-41. Plaintiff was then sprayed in the face with pepper spray, Aff. Sgt. Borowsky, Pl's Resp., Ex. 3, pp. 222-23, and was unable to see any of the following events.

Plaintiff asserts that after he had been pepper sprayed, he was tackled to the ground by one

3

or more of the officers. Dep. Mark Wilson, pp. 240-42. Once on his back- and still unable to see- Plaintiff claims that he told the officers to "watch [his] leg." *Id*. at 244. Plaintiff had surgical hardware in his leg from a prior surgery. Plaintiff then asked the officers, "What the fuck are you doing? I can't even see, you fucking assholes." Def's Mot., Ex. E. Plaintiff claims that immediately after these comments the officers repeatedly "stomped" on his leg. Dep. Mark Wilson, pp. 244-45. Plaintiff admits that because he was blinded by the spray, he could not see which officer or officers actually stomped on his leg. *Id*. at 244. After his leg was stomped on, Plaintiff asserts that he rolled under a portion of the temporary fencing that was set up for the party. The fencing had been set up by Plaintiff to separate the back yard, where the party was occurring, from the front yard, which was visible from the street. Plaintiff does not recall the exact point that he was placed in handcuffs but denies that he resisted the officers' efforts to put the handcuffs on him. *Id*. at 254-55. Plaintiff was subsequently arrested and convicted of disorderly conduct in the Macomb County Circuit Court.

Plaintiff asserts that the officers used excessive force in effecting his arrest, in violation of the Fourth Amendment, when they "stomped" on his injured leg. Furthermore, Plaintiff asserts a First Amendment violation in that the officers "stomped" on his leg because he swore at the officers.

## II.     Summary Judgment Legal Standard

Defendants have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue

of material fact, the nonmoving party must present more than just some evidence of a disputed issue.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United

States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's]

evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

*Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475

U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence

of a fact; the nonmoving party must produce evidence that would be sufficient to require submission

of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D.

Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which

the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't*

*of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The Court will address Plaintiff's First amendment claim before turning to the Fourth

amendment claim.

### III.     First Amendment Retaliation Claim

### A.     Legal Standard

A First Amendment claim of retaliation requires a plaintiff to "demonstrate that: (1) he was

engaged in a constitutionally protected activity; (2) he was subjected to adverse action or deprived

of some benefit; and (3) the protected speech was a 'substantial' or 'motivating factor' in the adverse

6

action." *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004) (citing *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003)). *See also Mt. Healthy v. Doyle*, 429 U.S. 274, 287 (1977)). The Court must determine which, if any act of expression, motivated the adverse action. *Bonnell v. Lorenzo*, 241 F.3d 800, 811 (6th Cir. 2001) (citations omitted). A plaintiff must present "specific, non-conclusory allegations" reasonably linking the protected speech to the adverse action. *Bailey v. Floyd Co. Bd. Of Educ.*, 106 F.3d 135, 144 (6th Cir. 1997). Plaintiff must establish "that the events would have transpired differently absent the retaliatory motive" and demonstrate that the exercise of the protected right was a "substantial motivating factor" for the defendant's adverse action. *Mt. Healthy*, 429 U.S. at 287. Merely alleging the ultimate fact of retaliation is insufficient. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). *See also Bailey*, 106 F.3d at 145. "Conclusory allegations of retaliatory motive 'with no concrete and relevant particulars' fail to raise a genuine issue of fact for trial." *Murray v. Unknown Evert*, 84 Fed. App'x 553, 556 (6th Cir. 2003) (citations omitted).

### B.     Analysis

In the present case, Plaintiff does not assert that he was arrested because of any protected speech, only that the excessive forced used to injure him was caused at least "in part" by his questioning of the officers and his swearing at them. *See* Pl's Resp., p. 7. The Court need not delve into the issue of whether Plaintiff's speech was protected because, even if it was, Plaintiff has presented no evidence that the officers' alleged actions were motivated by Plaintiff's comments. Plaintiff's mere allegation that the officers were motivated by his comments are unsubstantiated claims. Plaintiff offers no evidentiary link between any of his comments and any actions by the

7

officers. Plaintiff's claims are merely "conclusory allegations of a retaliatory motive" without "concrete and relevant paticulars." *See Murray v. Unknown Evert*, 84 Fed. App'x at 556. Such allegations fail to raise a genuine issue of material fact. Therefore, Defendants are entitled to summary judgment on this issue. *See Bailey*, 106 F.3d at 144; *Murray*, 84 Fed. Appx. at 556; *Murphy*, 833 F.2d at 108.

### III. Fourth Amendment Excessive Force Claim

#### A. Legal Standard

The Fourth Amendment to the United States Constitution prohibits the use of excessive force when effectuating an arrest. *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005). The United States Supreme Court recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). The test a court must apply to determine if the force used was excessive is "whether the officers' actions are 'objectively unreasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *St. John*, 411 F.3d at 771 (quoting *Graham*, 490 U.S. at 397). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (citing *Graham*, 490 U.S. at

8

396).  The Court of Appeals for the Sixth Circuit considers the following non-exhaustive factors

when considering the officers' judgment about the level of force necessary under the circumstances:

"the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*St. John*, 411 F.3d at 771 (quoting *Graham*, 490 U.S. at 396).  These factors are not exclusive

however, and a court must ultimately determine '' 'whether the totality of the circumstances justifies

a particular sort of seizure.' ''  *St. John*, 411 F.3d at 771 (quoting *Tennessee v. Garner,* 471 U.S. 1,

8–9 (1985)).

### B.     Analysis

In the present case, taking the facts in a light most favorable to the non-moving Plaintiff, an

analysis under the non-exhaustive *Graham* factors favors Plaintiff.  There is a genuine issue of

material fact as to whether the officers used excessive force when they allegedly stomped on

Plaintiff's leg after he had been pepper-sprayed and tackled to the ground.

The crime at issue was not a severe one.  After the altercation Plaintiff was cited and

convicted for disorderly conduct, a relatively minor infraction.  And although Plaintiff admits that

he initially resisted Lt. Reichenbach's orders to go to the ground, Plaintiff asserts that he didn't resist

or pull away when the officers attempted to handcuff him.  *See* Dep. Mark Wilson, p. 254; Dep.

Marjorie Wilson, pp. 128-32.  Furthermore, at the time of the alleged stomping, Plaintiff asserts that

he was incapacitated due to the pepper spray and had been tackled to the ground, with several

officers holding down various parts of his body.  Plaintiff then warned the officers to "watch [his]

leg."  At that point, with Plaintiff blinded by the spray, lying on the ground with several officers on

9

top of him, one or more of the officers began to "stomp" on his leg.

Defendants vigorously dispute Plaintiff's version of the events. However, for the purposes of this motion, the Court must take the facts in a light most favorable to the non-moving Plaintiff. Furthermore,, Plaintiff's version of the facts are supported, at least in part, by the testimony of his wife and his neighbor Joe Tanghe. Although Defendants point out many inconsistencies in the evidence cited by Plaintiff in support of his claim, at this stage of the proceeding the Court cannot make credibility determinations or weigh the evidence that has been presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Under this disputed scenario, even if Plaintiff had initially resisted arrest, the officers stomped on his leg after he had been significantly neutralized, both chemically and physically. Taking the facts in this light, there is a genuine issue of material fact as to the *Graham* factors and therefore whether the officers' actions, stomping on Plaintiff's medically sensitive leg after he was neutralized, was an objectively unreasonable use of force in violation of the Fourth Amendment. *See e.g.*, *Bultema v. Benzie* County, 146 F. App'x 28, 35 (6th Cir. 2005)("[T]he gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional ."); *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002) ("[T]here was simply no governmental interest in continuing to beat Phelps after he had been neutralized, nor could a reasonable officer have thought there was."); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988). Accordingly, summary judgment in favor of the officers is inappropriate. *See Wilkey v. Argo*, 43 Fed. App'x 925, 928 (6th Cir. 2002) (stating that "[w]here factual disputes exist as to [the *Graham*] considerations, summary judgment is not appropriate." (citing *Kain v. Nesbitt*, 156 F.3d 669, 673 (6th Cir. 1998); *Santos v.*

*Gates*, 287 F.3d 846, 855 (9th Cir. 2002); and *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir.

1999))).                    **C.      Qualified Immunity**

Defendants argue that even if their actions are deemed unreasonable, summary judgment is

nevertheless appropriate because of the doctrine of qualified immunity.  For the reasons stated

below, the Court finds that summary judgment on the basis of qualified immunity is not warranted.

A ruling on a governmental actor's assertion of qualified immunity involves two questions:

"(1) whether, considering the allegations in a light most favorable to the party injured, a

constitutional right has been violated, and (2) whether that right was clearly established." *Estate of*

*Carter v. City of Detroit,* 408 F.3d 305, 310-11 (6th Cir. 2005) (citing  *Saucier v. Katz*, 533 U.S.

194, 201 (2001)).  The initial inquiry is whether the defendant's conduct violated a constitutional

right. *Saucier*, 533 U.S. at 201.

In the instant case, as detailed above, taking the facts in a light most favorable to Plaintiff,

there is a genuine issue of material fact as to whether Defendants' conduct when allegedly stomping

on  Plaintiff's leg during his arrest was objectively reasonable.  *See Graham*, 490 U.S. at 396.  As

a result, there is a genuine issue of material fact as to whether Defendants violated Plaintiff's right

to be free from the use of excessive force.  *See Shreve*, 453 F.3d at 688; *St. John*, 411 F.3d at 771.

Turning to examine whether the right was clearly established, the Court of Appeals has

explained:

> As this circuit has analyzed the qualified immunity issue in excessive force cases, the
> question of whether the reasonable officer would have known his conduct violated
> clearly established constitutional rights can be answered by the initial inquiry of
> whether the officer's use of force was objectively reasonable. *See Martin* [*v.*
> *Heideman*], 106 F.3d [1308], 1312-13 [(6th Cir. 1997)]; *Walton* [*v. City of*
> *Southfield*], 995 F.2d [1331], 1342 [(6th Cir. 1991)]. It is clear from this circuit's

11

analyses in various excessive force decisions that, having concluded that the right to be free from excessive force is clearly established, whether we grant qualified immunity in a particular case depends upon whether the officer did, in fact, use excessive force ( *i.e.*, force that was not objectively reasonable). *Martin*, 106 F.3d 1312-13; *Walton*, 995 F.2d at 1342; *Kain* [*v. Nesbitt*,]156 F.3d [669], 672-73 [(6th Cir.1998)]. To put it another way, if there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful.

*Kostrzewa v. City of Troy*, 247 F.3d 633, 641-42 (6th Cir. 2001). *See also Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997) (finding that where a genuine issue of fact exists as to whether the defendant police officer used excessive force in handcuffing the plaintiff, it is error to grant the officer qualified immunity).

Consequently, because this Court has found that taking the facts in the light most favorable to Plaintiff there is a genuine issue of material fact as to whether Defendants' use of force was objectively reasonable, there "naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful." *Kostrzewa*, 247 F.3d at 641-42. Consequently, Defendants are not entitled to the protection of an affirmative defense of qualified immunity at this summary judgment stage of the proceedings.

**IV.    Conclusion**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [docket entry #23] is **GRANTED-IN-PART** and **DENIED-IN-PART**:

The motion is **GRANTED** with respect to Plaintiff's First Amendment retaliation claim.

The motion is **DENIED** with respect to Plaintiff's Fourth Amendment excessive use of force claim and Defendants' claim of qualified immunity.

**SO ORDERED.**

Dated:  September 21, 2007      s/Paul V. Gadola
                                HONORABLE PAUL V. GADOLA
                                UNITED STATES DISTRICT JUDGE

<div style="border:1px solid">

Certificate of Service

I hereby certify that on  September 21, 2007  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
            Timothy S. Ferrand; Thomas M. Loeb                        , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                      .


                                s/Ruth A. Brissaud
                                Ruth A. Brissaud, Case Manager
                                (810) 341-7845

</div>